**Louis Beltran Sanchez BELLORIN**

v.

**The FIDELITY BANK et al.**

**Civ. A. No. 70–2677.**

United States District Court,
E. D. Pennsylvania.

Dec. 21, 1972.

---

---

David Freeman, Philadelphia, Pa., for plaintiff.

John G. Harkins, Jr., and Edith G. Laver, Philadelphia, Pa., for Fidelity Bank.

Kimber E. Vought, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Lemoyne Trust Co.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

On September 28, 1970, Plaintiff, Louis Beltran Sanchez Bellorin, filed a complaint against The Fidelity Bank ("Fidelity"), Lemoyne Trust Company, ("Lemoyne"), Fulghum Contracting Corporation, and Constructora de Tuberia, C. A. ("Contuca"), asserting a claim in the amount of $212,144.00 as a commission for personal services purported-ly rendered in connection with the collection of a debt owed by the Venezuelan Government to Contuca, a subsidiary of the Fulghum Contracting Corporation.

Plaintiff's claim is based on a letter of authority dated May 29, 1962 to Howard Rife from Fidelity and Lemoyne, authorizing Rife to collect the debt owed by Venezuela to Fulghum Contracting Corporation; on the purported assignment by Rife to Plaintiff of that letter of authority; and on certain letters to Plaintiff from James T. Fulghum in his own behalf, on behalf of Fulghum Contracting Corporation and purportedly on behalf of the defendant banks.

Each of the defendant banks was served with the Complaint and has answered denying any liability to Plaintiff. More specifically, Fidelity and Lemoyne deny that they knew of, authorized or ratified any assignment of the May 29, 1962 letter. Fidelity and Lemoyne also denied that they ever authorized James T. Fulghum, Fulghum Contracting Corporation, or Constructora de Tuberia, C. A. (Contuca) to act as their agent; and deny that they ratified or affirmed the actions of James T. Fulghum in seeking help from Bellorin to collect the debt from Venezuela.

Service on Defendant, Fulghum Contracting Corporation, was attempted in 1970. On motion of the Defendant, an order was entered on June 28, 1971 quashing service on Fulghum Contracting Corporation. A second summons was returned "Not Served" as to Fulghum Contracting Corporation on April 5, 1972, and effective service on Fulghum Contracting Corporation has not been made as of the date of the filing of this memorandum.

On July 1, 1970, an Order to Dismiss without Prejudice was entered as to Constructora de Tuberia, C. A. (Contuca), which, so far as the record discloses, was never served.

Discovery has been conducted by Plaintiff and the defendant banks, in-

cluding depositions of Plaintiff, several officers of Fidelity, and James T. Fulghum.

Fidelity and Lemoyne have now moved for summary judgment.

## I. THE UNDISPUTED FACTS & CONCLUSION OF LAW

Beginning in 1955, Lemoyne began extending loans to Fulghum Contracting Corporation. These loans were secured by receivables and equipment of Fulghum Contracting, and securities and real estate owned by James Fulghum. Because of the size of the loans, Lemoyne brought in Fidelity as a participant. In 1958, Contuca, a wholly owned subsidiary of Fulghum Contracting Corporation, in a joint venture with a Venezuelan company named Petrogas, completed construction of a pipeline in Venezuela. Because of a change in the Venezuelan Government in 1958, payment of nearly $1,000,000.00 due Fulghum Contracting Corporation under the construction contract, was withheld. On June 10, 1959, Fulghum Contracting Corporation assigned this receivable as collateral, to further secure the loans of Fidelity and Lemoyne. The Venezuelan Government was duly notified of this assignment.

In approximately 1960, Fulghum Contracting Corporation began experiencing difficulty in making payments on its loans from Lemoyne, and liquidation of the collateral commenced. On May 29, 1962, Fidelity and Lemoyne authorized one Howard Rife to act as their agent in the collection of the Venezuelan claim. This letter of authority read as follows:

"This letter will authorize you on behalf of Fidelity-Philadelphia Trust Company and Lemoyne Trust Company to accept payment of their claim as assignee of Fulghum Contracting Corporation against the Venezuelan Government for the unpaid balance due on the contract between Fulghum Contracting Corporation, through its wholly-owned subsidiary, Constructora de Tuberia, C.A. (Contuca) in a joint venture with Petrogas, C.A. and the Venezuelan Government, acting by and through the Venezuela Petrochemical Institute, dated September 25, 1956, for the construction of a pipeline between Anaco and La Mariposa. The claim is outlined in a letter to the Minister of Hacienda, Republic of Venezuela, dated March 23, 1961, a copy of which is attached hereto.

This will supersede any previous instructions or powers of attorney by the undersigned banks to any other persons and you may inform the Venezuelan Government or its representatives that you have the sole authority to act as agent for collection on our behalf.

As stated in our previous letter of March 23, 1961, above referred to, payment should be made by check or draft to the order of Fidelity-Philadelphia Trust Company, in which case this Bank will disburse to Lemoyne Trust Company the proportionate amount owing to that institution."

By December 4, 1962, Mr. Fulghum, having liquidated a large part of his personal assets, had repaid Fidelity in full. By January 31, 1964, Fulghum had repaid Lemoyne in full.

In early 1964, while in Washington, D. C., Mr. Fulghum was introduced to Plaintiff by a mutual acquaintance. During that meeting, Plaintiff testified, he discussed the Venezuelan debt with Mr. Fulghum. Plaintiff told Mr. Fulghum he could collect the still outstanding debt from the Venezuelan Government. While Mr. Fulghum mentioned his relationship with the banks, he did not, according to Plaintiff, state that he was acting on behalf of Fidelity or Lemoyne.

"Q. Mr. Sanchez Bellorin, what was your understanding of the capacity in which Mr. Fulghum was acting when you met with him in Washington?

A. The impression I had was that he was a big businessman. He told me that he was the owner of the

Fulghum Contracting Corporation and in Venezuela he was also the owner of Constructora de Tuberia, C.A., also known as Contuca.

Q. Did you understand that Mr. Fulghum was acting on behalf of the company of which he was an officer?

A. Yes, sir.

Q. Did you understand Mr. Fulghum to be acting on behalf of anyone else in addition to those companies?

A. No.

Q. When did you first learn of the existence of a relationship between Mr. Fulghum, or the companies, and the defendant banks?

A. During our interview in Washington. He told me that the Fidelity-Philadelphia Trust Company had granted him a large credit in order to finance some business that was being done in Venezuela.

Q. Did Mr. Fulghum state to you during that interview that he was acting on behalf of Fidelity?

A. No, only in behalf of the Fulghum Contracting Corporation and Contuca. He did mention that he had an excellent relationship with the Fidelity-Philadelphia Trust Company, that he had almost unlimited credit there in order to be able to do some of the business that he was doing in Venezuela. He had excellent relations with them.

Q. Is the same true as to Lemoyne?

A. No.

Q. Did he mention Lemoyne?

A. Yes, because Lemoyne had also financed him with a share of some of this money that he needed for these enterprises in Venezuela.

Q. Did Mr. Fulghum tell you anything else about either bank?

A. The only thing mentioned was the connection that he had and the credit that he had gotten from the bank, that he had credit with them."

On the instructions of Fulghum and without the knowledge of either bank, Plaintiff had Rife execute what was intended to be an assignment of the May 29, 1962 letter of authority to Rife over to Bellorin. That purported assignment is dated June 1, 1964, at a point in time after both banks had been repaid in full.

At the time of the purported assignment, Plaintiff already had in his possession a letter written on Fulghum Contracting Corporation letterhead, dated February 18, 1964, from James T. Fulghum, President of Fulghum, authorizing Plaintiff to "act as our agent in negotiating settlement of the balance due on a contract between the Republic of Venezuela and Contuca, a wholly owned subsidiary of Fulghum Contracting Corporation of Harrisburg, Pennsylvania." No mention of the banks was made in that letter.

Mr. Fulghum subsequently wrote additional letters to Plaintiff authorizing him "on behalf of Fulghum Contracting Corporation, Fidelity-Philadelphia Trust Company, and Lemoyne Trust Company, to accept payment of their claim . . ." None of these letters evidences a carbon copy to either defendant bank and the records of both banks indicate that the banks were completely unaware of these documents. Mr. J. Wayne Wilson, the Fidelity Vice President in charge of Fulghum's account testified that Fidelity did not at any time authorize Mr. Fulghum to write these letters. Mr. Fulghum also testified that he had no authority from either bank to authorize such an assignment, and in fact, never discussed his action with them.

Fidelity and Lemoyne had no knowledge of the purported assignment of the Rife letter of authority, or the subsequent letters from Fulghum to Plaintiff at least until May of 1968. Mr. Rife never informed either bank that he had "authorized" any other person to act on his behalf.

Plaintiff first came to Fidelity's attention in May 1968 when he arrived in Philadelphia and called upon Mr. J.

Wayne Wilson. Mr. Wilson telephoned James T. Fulghum during the visit, and at his request cooperated with Plaintiff who had asked for certain documents to help him collect the claim against the Venezuelan Government. Whether or not the Plaintiff or the Plaintiff's son, Mr. Luis Sanchez Tineo, who was acting as Plaintiff's interpreter at this session, ever mentioned to Wilson that the Plaintiff felt himself to be acting in behalf of the banks also, is a disputed fact.

During his 1968 visit to Fidelity, Plaintiff requested and received from Fidelity a letter attesting to the good character of James T. Fulghum and the reputability of Fulghum Contracting Corporation. Mr. Wilson also aided Plaintiff in obtaining a certified statement from Laventhol, Krekstein, Horwath & Horwath, Certified Public Accountants, that *as of March 23, 1961* Fulghum Contracting Corporation had owed Fidelity $849,816.07. Fidelity apparently provided this assistance at Mr. Fulghum's request. Fidelity's explanation for providing this information in the form that it was provided was that it believed that Mr. Fulghum wanted to give the impression to the Venezuelan Government that the money that was owing under the 1958 contract was not owing merely to a private individual but to a large and influential American bank, and that this might help Mr. Fulghum in obtaining payment of his own claim. The propriety of this particular operation might be questioned, but it is not particularly relevant to the outcome which the Court arrives at in this case.

In 1969, Mr. Carlos Vogelar Rincones, President of Petrogas, Contuca's Venezuelan joint venturer in the 1958 pipeline project, received a payment in settlement of the claim against the Venezuelan Government. Plaintiff now claims that Fidelity and Lemoyne, jointly and individually, are liable to him for a 30% commision on all monies so paid to Petrogas.

Plaintiff claims that he obtained a valid assignment of the Rife collection agreement. Defendant claims that the collection agreement was inherently unassignable in that it was an agency contract which depended upon the personal skills of the individual with whom the agreement was originally made. Plaintiff claims that the collection agreement was no more than an ordinary collection agency agreement and assignable on its face. Defendant claims that, because of the discharge of the debts for which the assignment was given, and the reassignment of the claim to Fulghum, the collection agreement had ceased to have any vitality. Plaintiff responds that because of the notification of the Venezuelan Government of the assignment of the debt by Fulghum to the banks in 1961, the failure of the banks to notify the Venezuelan Government that the assignment was not still in effect, and the failure to revoke the collection agency agreement with Rife after the debts had been paid, the banks had acted in such a way as to make the agency agreement appear prima facie assignable, and that the Plaintiff took his assignment based on those facts and undertook to perform his collection in good faith, and in reliance upon the deceiving appearance of circumstances brought about by the banks' own actions. The Defendant further argues that during the meeting between Plaintiff and an agent of Fidelity in 1968, Fidelity at any rate ratified the agency agreement because the Plaintiff informed the agent of Fidelity that Plaintiff believed himself to be acting on behalf of the banks and the agent of Fidelity failed to object. The Court need not resolve any of these issues. This is because one thing is perfectly clear and undisputed: No person at any time ever tendered any money to either of defendant banks, either directly or through any channel or conduit, in a prima facie attempt to discharge the debt of the Venezuelan Government because that debt still appeared to be assigned to the defendant banks. In actual fact, no

one ever tendered any money to defendant banks at all.

Even assuming that the agency agreement with Rife were a collection agency agreement which was assignable, even assuming that the power to act for the bank under the agency agreement might have been ratified in 1968, and even assuming that the banks were in some way negligent in not notifying Venezuela that they no longer held an assignment of the debt in question, and in not canceling the outstanding collection agency agreement, the banks could under no circumstances, become liable to pay commissions on monies which were never tendered to the banks. If Rife himself were here, he could not collect a commission on the facts of this case. Indeed, if Rife himself were here, and the debt had still been assigned to the banks, he could not obtain a commission on the facts of this case. For it is undisputed that the monies paid by the Venezuelan Government in discharge of their debt were paid to Petrogas C.A. and that no part of those monies was ever in any manner tendered to the defendant banks. If the Venezuelan Government had written a check to Fidelity Bank and tendered it to Fidelity Bank in 1969 because of the activities of the Plaintiff on behalf of Fidelity Bank undertaken on a good faith belief that he was authorized to act for Fidelity Bank to collect a debt which was still assigned to them, then perhaps the result in this case might be different. Perhaps defendant banks were treading on thin ice when they failed to notify the Venezuelan Government of the reassignment of the debt to Fulghum Contracting Corporation, and when they failed to cancel their outstanding collection agreement with Rife. But there is no way that they could become liable, under the terms of that collection agreement, to pay commissions for the collection of monies not tendered to them. Therefore Summary Judgment will be entered for the Defendant, Fidelity Bank, and the Defendant, Lemoyne Trust Company, and against the Plaintiff, Louis Beltran Sanchez Bellorin.